UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSE BELTRAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION H-10-1949 |
| § | |
| THE UNIVERSITY OF TEXAS HEALTH § | |
| SCIENCE CENTER AT HOUSTON, § | |
| § | |
| Defendant. § | |

## ORDER

Pending before the court in this Title VII discrimination case is a motion for summary judgment filed by defendant the University of Texas Health Science Center at Houston ("UTHealth"). Dkt. 9. After review of the motion, the response, the relevant exhibits, and the applicable law, the motion for summary judgment is GRANTED for the reasons set forth below.

### I. Background

Plaintiff Jose Beltran ("Beltran" or "plaintiff") was enrolled as a fifth year resident in the Oral and Maxillofacial Surgery Program at UTHealth. Dkt. 1. On June 27, 2008, Beltran was informed that he would not advance to the level of sixth year resident and was, therefore, effectively terminated from the program. *Id.* ¶ 17. Beltran alleges that UTHealth discriminated against him because he is Hispanic. *Id.* ¶ 7. He alleges the following acts of discrimination based upon his race or national origin: (1) his supervising dentist, Dr. Wilson, misidentified him with a variety of Latino names; (2) on one occasion Beltran was improperly accused of failing to diagnose a patient; (3) Beltran was passed over for the highest "rotating" paycheck; and (4) Beltran was denied vacation time that was later granted to another non-Hispanic resident. *Id.* Beltran also alleges that he was retaliated against for complaining of discrimination—he alleges that after he was terminated from

the residency program, he complained to the Oral and Maxillofacial Surgery (OMS) Program Director about the alleged discriminatory treatment. *Id.* ¶ 18. The Program Director then reviewed Beltran's appeals documents and decided not to ask the OMS Graduate Education Committee to reconsider Beltran's termination. *Id.*

Following his termination, Beltran filed a charge of national origin discrimination against UTHealth with the Equal Employment Opportunity Commission ("EEOC"). Dkt. 1 ¶ 6. He filed this complaint within 90 days after receiving notice of the right to sue from the EEOC. *Id.* UTHealth has filed a motion for summary judgment. Dkt. 9. Plaintiff has responded. Dkt. 12. The motion is now ripe for disposition.

## II. Analysis

**A. Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by

presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## B. Title VII - Discrimination and Retaliation Standards

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to discharge an employee because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). When a plaintiff offers only circumstantial evidence, the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination. *See Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973)). To establish a *prima facie* case, the plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) others similarly situated were more favorably treated or that the plaintiff was replaced by a non-minority. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006)

(quoting *Rutherford*, 197 F.3d at 184); *Jatoi v. Hurst-Eules-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987)).

If the plaintiff successfully establishes a *prima facie* case of discrimination, the employer must then produce a legitimate nondiscriminatory reason for its adverse employment decision. *Id.* Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates and the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that the nondiscriminatory reason is merely pretextual in order to survive summary judgment. *Id.* To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). A plaintiff may establish pretext by showing either (1) the reason offered by the employer is untrue, or (2) the reason is true, but the plaintiff's protected characteristic was a motivating factor in the adverse decision (the "mixed-motive" alternative). *Id.*; *Keelan v. Majestco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against him because of his protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001).

Title VII's anti-retaliation provision protects an employee who is discriminated against because he has "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405 (2006) (quoting 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) a casual link existed between the protected

activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 1997). At a minimum, "in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citing *Medine v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)). If the plaintiff makes a *prima facie* showing of retaliation, the burden of production shifts to the employer, which must "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. . . . To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.*

**C. Analysis**

**1. Exhaustion**

As a threshold matter, UTHealth seeks summary judgment on the affirmative defense that Beltran has failed to exhaust his administrative remedies regarding his race discrimination claim. Exhaustion under Title VII requires filing a timely charge of discrimination with the EEOC and receipt of a "right-to-sue" letter. 42 U.S.C. § 2000e-5(e) and (f). UTHealth argues that because Beltran's charge to the EEOC only stated that he was discriminated against because of his Ecuadorian national-origin, administrative remedies with respect to his Hispanic race claim have not been exhausted. Dkt. 9 at 16. Further, UTHealth contends that Beltran should be charged with knowledge of Title VII's procedural requirements because he was represented by counsel when he filed his

EEOC charge, and that the court should, therefore, not liberally construe his charge to include Hispanic discrimination when he only alleged Ecuadorian discrimination. *Id.*

"A Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations . . . that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1992). The court agrees with UTHealth that one policy justification for permitting the scope of a Title VII suit to extend to allegations beyond those specifically alleged in the administrative charge is to protect lay persons without legal assistance, but this has never been a factor considered by the courts in deciding whether a particular Title VII plaintiff's allegations can be expanded. Rather, the sole focus of the court is to determine whether the new allegations could reasonably be expected to grow out of the initial charges of discrimination. *Id.* Courts have looked to whether the employee already included sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 879 (5th Cir. 2003) ("One of the central purposes of the employment discrimination charge is to put employers on notice of "the existence and nature of the charges against them."); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970) (concluding that the plaintiff could add a claim of gender discrimination because the facts in her original charge supported such a claim). Here, the facts supporting Beltran's complaint and his EEOC charge are identical, and his claim of race discrimination is premised upon the same evidence as his national origin claim. Nothing in the judicial complaint filed by Beltran is beyond the scope of the charges he filed with the EEOC.

7

Further, several courts have interpreted claims of discrimination based upon the plaintiff's status of being "Hispanic" as being a national origin discrimination claim. *See, e.g., Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125 (E.D.Pa.1978); *Vazquez v. Werner Continental, Inc.*, 429 F.Supp. 513 (N.D.Ill. 1977); *see also Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998) ("Whether being Hispanic constitutes a race or a national origin category is a semantic distinction with historical implications not worthy of consideration here."). *See generally Jatoi v. Hurst–Euless–Bedford Hosp. Auth.*, 807 F.2d 1214, 1218 (5th Cir.1987) ("We have recognized the difficulty in distinguishing discrimination based on national origin from that based on race."). The EEOC has also defined "Hispanic" as a national origin group. *See* http://www.eeoc.gov/policy/docs/national-origin.html ("Title VII prohibits employment discrimination against any *national origin group*, including larger ethnic groups, such as Hispanics and Arabs . . . .") (emphasis added). Therefore, the allegations contained in Beltran's EEOC charge regarding his Ecuadorian nationality would reasonably cause the EEOC to investigate discrimination based both on his national origin or race, thereby satisfying the "reasonably related" requirement, even though Beltran only checked the box labeled "national origin" on his EEOC charge. The motion for summary judgment is DENIED in this respect.

**2. Prima Facie Case and Rebuttal of Defendant's Non-Discriminatory Reason**

Defendant UTHealth first challenges the existence of a *prima facie* case of discrimination with respect to Beltan's alleged specific instances of adverse employment actions. Specifically, UTHealth asserts that Beltran has not presented evidence that similarly situated non-Hispanics were treated more favorably. Dkt. 9 at 21. Additionally, UTHealth argues that, even if Beltran could make out a *prima facie* case with respect to each alleged adverse employment action, there was a legitimate, non-

8

discriminatory reason for UTHealth's actions that Beltran cannot establish was pretext for discrimination. *Id*. at 18. Defendant asserts that Beltran was removed from the OMS Program because he "fail[ed] to correct the deficiencies that were identified as the reasons for his probation." *Id*. Specifically, he continued to be unprepared for surgery, lacked knowledge of surgical anatomy, and received several negative evaluations from supervising physicians at multiple hospitals. Dkt. 9-10 at 5.

### *a. December 11, 2007 - misdiagnosis leading to probation.*[1]

Beltran alleges that he was improperly blamed for failing to adhere to the standard of care in diagnosing and managing a dentoalveolar injury. Dkt. 1 ¶ 13. On December 11, 2007, Beltran was paged for a consult on a teenage patient who had injured his teeth while skateboarding. Dkt. 9 at 3. After Beltran informed the patient's mother of the treatment options, the mother asked for a consult with a plastic surgeon. Dkt. 9-12 at 1. Beltran then told the patient's mother that she would have to pay for the consult with a credit card. *Id*. The patient's mother became angry, believing the statement to be racially discriminatory. *Id*. She subsequently filed a complaint with a social worker. Dkt. 9-12 at 1. Beltran chose to leave the patient's room and call his supervising physician, rather than defuse the situation himself. Dkt. 9-11 at 1. UTHealth alleges that during his discussion with another physician, Beltran improperly described the patient's injuries. Dkt. 9 at 3. He told the physician that

---

[1] Beltran's placement on probation does not independently constitute an adverse employment action. *See Stewart v. Missouri Pac. R.R. Co.*, 121 Fed. Appx. 558, 562-63 (5th Cir. 2005) (finding no "adverse employment action" because the only impact of being placed on probation was that if the employees violated company policies while on probation, they would face stiffer discipline for the violation than they would have if they were not on probation). The court considers the dispute surrounding Beltran's being placed on probation only in the context of his termination, which does constitute an adverse employment action, and which resulted from his "failure to correct the deficiencies that were identified as the reasons for his probation." Dkt. 9 at 18.

9

the patient's teeth were *intruded* lingually instead of retruded lingually. *Id.* at 4. In his complaint, Beltran alleges that he did not misdiagnose the injury and that he included the proper diagnosis in a typed report, which he was unable to produce because "it had disappeared from the system." *Id.* Beltran was placed on probation because of this incident for six months from January 24, 2008 to August 31, 2008. Dkt. 9 at 10. Beltran very generally alleges that "this was not done with non Hispanic residents." Dkt. 1 ¶13.

The Fifth Circuit defines "similarly situated" very narrowly. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). "Similarly situated" employees are employees who are treated more favorably "under nearly identical" circumstances. *Id.*; *see also Perez v. Tex. Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004) ("We ... have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'"). The "nearly identical" standard is a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be "nearly identical." *Lee*, 574 F.3d at 259-60. Beltran's conclusory statement that "this was not done with non Hispanic residents" is insufficient to establish that other similarly situated employees were treated more favorably. He has not alleged that other residents were accused of misdiagnosing patient injuries or of insulting patients but were not placed on probation. Conjecture, speculation, and conclusory allegations do not state a claim for which relief can be granted. *Grines v. Tex. Dep't of Mental Health and Retardation*, 102 F.3d 127, 140 (5th Cir.1996).

### *b. June 20, 2008 - termination from the residency program.*

Prior to the end of Beltran's probation period, the OMS Program Director asked the Graduate Education Committee (GEC) to review Beltran's performance during the probation period to determine whether he should advance to his sixth year of residency. Dkt. 9-3 ¶7. The GEC evaluated several incidents that occurred during Beltran's probation. *Id*. at 5. Specifically, the Program Director noted that the incidents included: failing to run a code for an unconscious patient, removing the wrong molar tooth after being warned that it was the wrong tooth, misinforming a patient that he would not need a necessary surgery, and several poor performance evaluations from supervising dentists at the Dental Branch, Memorial Hermann, and Ben Taub General Hospital. *Id*. On June 20, 2008, the GEC unanimously voted to terminate Beltran from the program because "Dr. Beltran had failed to demonstrate a level of clinical skill, clinical judgment, and sufficient knowledge base to justify his continuation in the program." *Id*. at 7.

Beltran again fails to establish a *prima facie* case of racial/national origin discrimination. He has presented no evidence that similarly situated, non-Hispanic residents were treated more favorably, and he certainly has not met the Fifth Circuit's narrow "narrowly identical" standard. *See Lee*, 574 F.3d at 259-60. Beltran does not identify any incidents in which other residents obtained poor performance evaluations, misdiagnosed dental injuries, or failed to run codes in emergency situations but were not placed on probation or terminated. Because Beltran has not identified any other resident who was similarly situated to him and who was not treated as harshly, he has not met his burden to establish each element of a *prima facie* case of race/national origin discrimination.

11

### *c. Other Alleged Discriminatory Treatment by UTHealth Program Administration*

Beltran asserts that he was informed by OMS Administration that each resident in the OMS program would be paid the highest level of pay on a rotating basis. He argues that he never received the highest rotating pay, but the non-Hispanic residents did. Dkt. 1 ¶14. He also alleges that he was denied vacation time that a non-Hispanic resident was later granted. *Id.* ¶15.

These incidents are not addressed in defendant's motion for summary judgment. However, assuming that the alleged incidents occurred, UTHealth is entitled to summary judgment because neither alleged incident constitutes an adverse employment action. To be actionable, an adverse employment decision must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a *significant change in benefits*." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (emphasis added); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 855 (S.D. Tex. 2010).

First, with respect to vacation time, Beltran has not provided the Court with sufficient information to determine whether he was permitted to take his vacation a few days after the time he requested. "Certainly, the fact that [the plaintiff] was not allowed to take a vacation day on a particular holiday is not actionable if he were allowed to take it at another time." C*assey v. Coca-Cola Enter.*, CIVA 05-0152, 2006 WL 3862005 (W.D. La. Dec. 29, 2006) (holding that the plaintiff failed to provide the Court with sufficient information to conclude that denied overtime pay and vacation time constituted adverse employment actions). The Fifth Circuit considers adverse employment actions to include "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating," *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). At

least one district court has interpreted "granting leave" to refer to entitlement determinations— how much vacation time an employee can take, as opposed to scheduling decisions whether the employee can take leave at a particular time. *See Paniagua v. Tex. Dep't. of Criminal Justice*, CIV A 3:99CV2681L, 2001 WL 540908 (N.D. Tex. May 18, 2001). The courts that have considered the issue have routinely found that the denial of short term vacation time is not an adverse employment action. *See Lara v. Kempthorne*, 673 F. Supp. 2d 504, 518-19 (S.D. Tex. 2009) (holding that denial of vacation leave request was not actionable); *Bowles v. N. Y. C. Transit Auth.*, 2006 WL 1418602, *12 (S.D.N.Y. May 23, 2006) (denial of a single day of leave is not an adverse employment action); *Cabral v. Philadelphia Coca Cola Bottling Co.*, 2003 WL 1421297 *7 (E.D. Pa. May 18, 2003) (denial of leave on specific dates is not an adverse employment action); *Boyd v. Presbyterian Hsp, in City of New York*, 160 F.Supp.2d 522, 537 (S.D. N.Y. 2001) (denial of vacation is not sufficiently materially adverse to constitute adverse employment action). Hospitals routinely restrict when employees are permitted to take vacations during the holidays. Therefore, Beltran has failed to meet his *prima facie* burden that denial of vacation time on the schedule he wished constituted an adverse employment action.

Second, Beltran claims to have been denied a higher rotating paycheck, but he has not presented any evidence of how much pay was involved. The court, therefore, is unable to determine whether an "adverse action" occurred—it may well be that the pay differential is a matter of a few dollars and is, therefore, not a "significant" difference in compensation. Beltran bears the burden of producing evidence of an adverse employment action, and has failed to do so.[2]

---

[2] Indeed, it may be that Beltran, consistent with his assertion that the additional pay was made available on a "rotation" basis, was simply terminated before he reached his turn in the rotation.

Moreover, Beltran fails to connect these challenged employment actions to discrimination based on his national origin or race. Even if the Court were to conclude that Beltran has shown an adverse employment action relating to pay or leave, he has still failed to produce evidence (as opposed to conclusory allegations) with respect to the fourth prong—that similarly situated non-Hispanic employees under nearly identical circumstances were allowed to take vacation at the time they wished or that they received higher paychecks. *See Perez*, 395 F.3d at 213 (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991)). Therefore, Beltran's claims concerning denial of vacation leave and failure to pay a rotating higher paycheck are not actionable and UTHealth is entitled to summary judgment on those claims.

### *d.     Legitimate, non-discriminatory reasons*.

Even if Beltran had made out a *prima facie* case, UTHealth argues that it has articulated a legitimate nondiscriminatory reason for Beltran's probation and eventual termination that Beltran cannot rebut with evidence of pretext. First, Beltran misdiagnosed the teenager's dental injury. Dr. Robert's report, written on the night of the incident, states that Beltran described the teeth as "intruded and lingually subluxated," which means that the teeth were pushed up into the gums. Dkt. 9-13 at 1. Beltran's supervising physician, Dr. Wilson, concluded that Beltran had made a poor assessment of the teeth because they were actually "markedly displaced lingually," which means they were pushed back. Dkt. 9-10 at 3. Second, Beltran offended the patient's mother and failed to "demonstrate[] more effective skills toward defusing a bad situation." Dkt. 9-11 at 1. Beltran has not presented any evidence of pretext beyond his assertion that he properly diagnosed the patient. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *see also Mire*

14

*v. Tex. Plumbing Supply Co., Inc.*, 286 Fed. App'x 138, 143-144 (5th Cir. 2008) (unpublished) (per curiam) (plaintiff's subjective belief that she was right and defendant was wrong, without more, is insufficient to rebut defendant's reasons for the disciplinary action).

Further, Beltran's termination was premised upon his failure to demonstrate the necessary academic knowledge and clinical skill required of a senior resident and the incidents reviewed by the GEC during his probation. Dkt. 9 at 24. Beltran appears to argue that these incidents and performance evaluations are merely a pretext for discrimination because, during his rotation with Dr. Wilson, he was subjected to a pattern of "racial disrespect." Dkt. 12 at 2, 8. More specifically, Dr. Wilson (1) misidentified Beltran "with a variety of Latino names ranging from Juan to Luis to Alex"; (2) corrected Beltran's use of the word "grow" during a dictation; and (3) at one point called Beltran a "sack of shit." Dkt. 12¶6. "[I]n order for comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of which the plaintiff is a member; (2) proximate in time to the employment action; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Manning*, 332 F.3d at 882-83 (quoting *Wallace v. Methodist*, 883 Hosp. Sys.*,* 271 F.3d 212, 222 (5th Cir. 2001)). Beltran cannot meet the first requirement of the test with respect to the second and third alleged comments because those comments have no racial or national origin element to them. The only comments that arguably could be related to the plaintiff's protected class are the "variety of Latino names" that Dr. Wilson allegedly used to misidentify Beltran. These comments, however, were made by Dr. Wilson at Hermann Memorial Hospital from December 2007 to January 2008, at least five months before Beltran was terminated from the OMS program. Dkt.9-3 at 4. Beltran fails to allege either that he was called an incorrect Latino name at (or around) the time of his termination or that

15

calling him the wrong name related in any way to that employment decision. Further, Beltran presented no evidence that Dr. Wilson recommended termination or otherwise participated in the decision making process. *See Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 42 (5th Cir. 1996) ("To be probative, allegedly discriminatory statements must be made by the relevant decision maker.").

Finally, even assuming that Dr. Wilson had the ability to influence the members of the GEC to terminate Beltran, calling Beltran Juan, Luis, or Alex, instead of Jose, is insufficient to create an inference of race discrimination. The Fifth Circuit considers a remark to be probative of discrimination if it demonstrates discriminatory animus and was made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decision maker. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 351 (5th Cir. 2007) (citing *Laxton v. Gap Inc.,* 333 F.3d 572, 583 (5th Cir .2003)). Other than Dr. Wilson not remembering Beltran's name, Beltran mentions no other statements or incidents related to his race by anyone at the hospital. It may be that Dr. Wilson simply forgot Beltran's first name, which does not on its own demonstrate discrimination or animus. And, in any event, such remarks cannot suffice as the sole evidence of pretext. *Phillips v. TXU Corp.*, 194 F. App'x 221, 228 (5th Cir. 2006) (citing Palasota v. Haggar Clothing Co., 342 F.3d 569, 577 (5th Cir.2003) ("After *Reeves* ... so long as remarks are not the *only* evidence of pretext, they are probative of discriminatory intent") (emphasis added); *see also Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 403 n.7 (5th Cir. 2001) (refusing to consider stray remarks as circumstantial evidence of discrimination where there was no other evidence of pretext).

Therefore, for all of the above reasons, even if Beltran had made out a *prima facie* case, which he has not, Beltran has failed to rebut UTHealth's legitimate, non-discriminatory reasons for the alleged adverse actions it took.

### 3. Retaliation Claim

In addition to his discrimination claims, Beltran also alleges that UTHealth did not reconsider appointing him to the residency program, and that it took this action in retaliation for his allegations of discrimination. Dkt. 1 at 6. UTHealth argues that because Beltran only complained of discrimination *after* he was terminated, he cannot show that a causal link existed between the protected activity and the adverse employment action. *See Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). Although Beltran does not address this issue in his response to UTHealth's summary judgment motion (Dkt. 12), in his complaint Beltran alleges that it was the OMS program's failure to *reconsider* his termination from the program, not the termination itself, that constitutes retaliatory conduct. Dkt. 1 ¶ 17-18. Beltran alleges that after submitting a detailed appeal that included his allegations of discriminatory treatment, the director of the OMS program informed him that he would not ask the GEC to reevaluate their decision to terminate him. *Id.* Therefore, Beltran alleges that he was retaliated against because UTHealth refused to rehire him.

"Where the alleged discrimination resulted in a failure to rehire, a *prima facie* case requires the plaintiff to show that: (1) [he] is a member of a protected class; (2) [he] sought and was qualified for an available employment position; (3) [he] was rejected for that position; and (4) the employer continued to seek applicants with the plaintiff's qualifications." *McCullough v. Houston Cty. Tex.*, 297 F. App'x 282, 286 (5th Cir. 2008) (quoting *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996)). Beltran has failed to establish that he was qualified for the position for the same

reasons he cannot rebut the legitimate reasons offered for his termination from the program—i.e., he was terminated from the position because he was unqualified. Moreover, the few cases that address rehiring issues deal with instances in which the employee was *not* terminated for cause. *See, e.g., McCullough*, 297 Fed.App'x. at 286 (plaintiff quit her job when the new D.A. took office and argued that the new D.A. failed to rehire her); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1146 (5th Cir. 1981) (plaintiff was not rehired after being laid off because of seasonal nature of the seed business); (*Brown v. Transit Mgmt. of Se. La., Inc.*, No. CIV.A. 10-2620, 2011 WL 5119017 (E.D. La. Oct. 27, 2011) (plaintiff was not rehired after being laid off because Hurricane Katrina destroyed the city's buses). It would be counterintuitive to find that Beltran was terminated for cause and not based upon improper considerations, but that a refusal to rehire him was in retaliation for his unfounded allegations of discrimination. In short, the record establishes that Beltran was not considered for rehiring into the same position because, in UTHealth's view, he was not qualified for it. Beltran has failed to present evidence showing a causal link existed between his complaint of discrimination and UTHealth's refusal to rehire him. Therefore, Beltran's claim for retaliation is DISMISSED.

## CONCLUSION

After review of the motion for summary judgment filed by UTHealth (Dkt. 9), the response, the relevant exhibits, and the applicable law, the motion for summary judgment is GRANTED.

It is so ORDERED.

Signed at Houston, Texas on November 29, 2011.

_____
Gray H. Miller
United States District Judge